# Chicago, Burlington & Quincy Railroad Company v. Lillie Libey, Adm'r, etc.

1. JURIES—*Have no Right to Theorize.*—A jury has no right to theorize on either side of a case, but the parties must establish by evidence the respective theories advanced by them, if necessary to maintain their cause.

2. NEGLIGENCE—*Recoveries for, Must be Based on the Negligence Declared on.*—In a suit for personal injuries, said to have been caused by the negligence of the defendant, a recovery must be based on the negligence charged in the declaration, and an instruction which leaves the jury at liberty to find that such injuries were the result of any fault or negligence of the defendant, whether charged in the declaration or not, is bad.

3. VERDICTS—*Belief of Jury Must be Based on the Evidence.*—An instruction which tells a jury that if they believe certain facts they should find accordingly, is bad. The belief upon which a jury. is authorized to act must be based upon the evidence.

4. INSTRUCTIONS—*Should Not Assume Facts.*—Instructions should not assume facts which are in dispute.

5. SAME—*Must Apply to the Evidence.*—Even though an instruction may contain a correct proposition of law, it should not be given unless it applies to the evidence.

**Trespass on the Case.**—Death from negligent act. Appeal from the Circuit Court of Knox County; the Hon. JOHN J. GLENN, Judge, presiding. Heard in this court at the May term, 1896. Reversed and remanded. Opinion filed December 9, 1896.

WILLIAMS, LAWRENCE & WILLIAMS, attorneys for appellant; O. F. PRICE, of counsel.

CHARLES S. HARRIS, EDWARD J. KING and J. A. McKENZIE, attorneys for appellee.

MR. JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This was an action on the case brought by appellee, as administratrix of the estate of her husband, Moses Libey, deceased, to recover damages for his death while in the service of appellant as a brakeman on one of its freight trains. There was a verdict and judgment for appellee for $3,000, and appellant brings the case here by appeal.

The negligence charged in the declaration is, that appellant "suffered and allowed an iron spout or conduit to remain and be in an improper and too nearly horizontal position, so that the same extended out and over the top of defendant's train, and that but a few feet intervened between the said spout and the top of the cars; and that said defendant, when said spout or conduit was placed in said position, wrongfully, negligently and carelessly caused a locomotive and train of cars to be driven along on said main track at and in close proximity to said water tank and spout, and that by means of the premises, and by reason of the wrongfulness, carelessness and improper manner aforesaid, the said Moses Libey was then and there struck with great force and violence by the said water spout or conduit, and was then and there, by means thereof, hurled with great force and violence from and off said freight train to and upon the ground, and was thereby then and there killed." The declaration contains the usual averments as to due care on the part of the deceased.

The facts, as shown by the evidence, are substantially as follows:

Moses Libey, the deceased, was a brakeman on one of appellant's freight trains, passing Plano at 3 : 25 on the morning of January 29, 1895. The railroad at that station runs nearly east and west, and on the south side of the track there was a water-tank for the purpose of supplying engines with water. Attached to this tank was a spout or conduit, about 13½ feet in length, and weighing some 160 pounds, retained in position away from the tank by a counterpoise weighing about 148 pounds. To use this pipe in conveying water into the tank of the tender, it was pulled down by means of a rope attached, and after using, the spout was lifted up until the counterpoise operated to restore it to almost a perpendicular position away from the track. The train on which deceased was braking did not stop in Plano on the trip when he was killed, and the last engine that took water at the tank in question was hauling train No. 92, which passed through Plano shortly after six

o'clock on the evening of January 28, 1895, some eight or nine hours before Libey's train passed the same point.

The deceased was last seen alive in the cupola of the caboose upon which he was riding, by the conductor of his train, just as the train was coming into Plano, and he then had his head resting sideways upon his shoulder, as if he might have been asleep. ·His absence from the cupola was not discovered until the train had run about three miles east of Plano, when the conductor missed him, but supposing he was elsewhere about the train, no search was made for him until they stopped at Aurora, fourteen miles from Plano.   It being then ascertained with certainty that deceased was not on the train, a party with a switch engine and car were sent back over the road to search for him. He was found at Plano, at a point about 120 feet east of the water tank, and he was then in an unconscious and dying condition.   He subsequently died from his injuries, never having regained consciousness.   It was some two hours from the time his train passed through Plano until he was found.

The theory of appellee's case is that by reason of appellant's negligence, the water spout and its appliances became so clogged with ice that it would not remain in place, but dropped down to a somewhat horizontal position, and that when deceased, in the discharge of his duty, was riding on the top of the caboose, he came into collision with the spout, whereby he was knocked off the train and so injured as to cause his death.   While this is the theory, there is no direct evidence to substantiate it.   That it is possible the deceased came to his death in this way may be conceded, and yet another theory is equally possible.   The evidence shows that the top of the caboose was icy and slippery, and it being the duty of deceased to give, from the rear car, what the witnesses call the " high ball " signal, or signal to go ahead without stopping, to the crew of the engine, the theory of appellant is, that in passing out upon the top of the caboose to give the signal, he slipped and fell, and thus was killed.   As no one saw the deceased fall, there is no direct

C., B. & Q. R. R. Co. v. Libey.

evidence as to how he came from the caboose to the ground, and either theory is possibly correct. But mere theory is not sufficient to render the appellant liable; the charge of negligence must be proved as alleged. Only one witness testifies to seeing the spout out of position, and this was after deceased had been found injured, while quite a number of witnesses, having equal opportunities, testify to the contrary. The evidence shows that seven trains had passed the tank and spout in question from the time water was last taken therefrom at six o'clock the evening before, prior to the passing of the train on which deceased was employed, and the engineers and firemen of several of them testify that in passing they noticed the spout, and it was in its proper position. The evidence, we think, shows conclusively that if, after using, the spout were lifted up so that the counterpoise brought it to its proper position, it could not drop down again without some human agency, and if the witnesses who saw the spout in its proper position at various times through the night are to be believed (and we see no reason why they are not), then the spout, if dropped down as the one witness testifies to, must have been pulled down by some person; but as to whom it was, whether an employe of appellant or a stranger, there is no proof, nor is there any evidence that it was done through the negligence of appellant.

A careful examination of the evidence shows that it is a matter of serious question as to how the deceased came to his death. Under these circumstances it was a matter of great importance that the jury should be accurately instructed. There was no charge or claim in the declaration, nor was there any proof, that the spout in question, and its appliances, were "defectively constructed," and yet the second instruction given for plaintiff below tells the jury that if they "shall believe that Moses Libey came to his death by reason of a defectively constructed or placed water spout, as alleged in the declaration, and that such defect which caused his death was the result of fault or neglect and carelessness of the defendant," * * * they should find for the plaintiff, etc.

The vice of this instruction is that it submits to the jury an issue that was not in the case. Then, again, it assumes that the defective construction, or defective placing of the pipe caused the death; this was clearly improper. Instructions should not assume facts as being proven. The instruction was also faulty in giving the jury to understand that if they " believed " a certain fact, whether such belief was based upon the evidence or not, they were at liberty so to find.

The belief upon which a jury is authorized to act, must be based upon the evidence. In this case the jury may have believed that the deceased came to his death by reason of the pipe being out of its proper position, because that would seem to them a plausible theory, but they should not be told that they might so find unless such belief was sustained by the evidence.

The third instruction given for appellee is faulty, in that it does not confine the cause of death to the negligence charged in the declaration, but leaves the jury at liberty to find that such death was the result of any fault or negligence of appellant whatever, whether charged in the declaration or not, which was clearly improper. While the jury, from this instruction, were given the liberty of speculating or guessing as to the cause of death, yet they were told, in effect, that when it came to any matter of defense which might be set up by appellant, they had no right to guess, " unless such guess is the natural and proper conclusion to be drawn from the evidence." The jury have no right to guess on either side of a case. The plaintiff, as well as the defendant, must establish by evidence the respective theories advanced by them, if necessary to maintain their case. We think the instruction, as given, was erroneous and misleading.

The fourth instruction was clearly uncalled for and misleading, and was not warranted by any evidence in the case. So far as the matter of the probable negligence of a fellow-servant was concerned, it took the entire question from the jury. If the death of Libey was caused by the negligence

of a fellow-servant in the same line of employment, then the common master would not be liable, unless it had failed in its duty to exercise due care in the employment of such fellow-servant, and on this point there was not a particle of proof. And yet the jury were told by this instruction that Libey had a right to assume that appellant had exercised reasonable care in the selection of its employes; that he was not bound to investigate whether it had done so or not, and that until such time as notice to the contrary was brought home to him, he had a right to act on such assumption. Even though the instruction may contain a correct proposition of law, yet as applied to the evidence or the facts of this case, it should not have been given. Its practical effect was to neutralize every other instruction given upon the subject of fellow-servants, and absolutely cut out any defense based upon the theory that deceased came to his death through the negligence of a fellow-servant.

For these errors in the instructions, the judgment must be reversed and the cause remanded.

Reversed and remanded.